UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ELIZABETH A. BROYLES,

                Plaintiff,

   v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security

                Defendant.

Case No. 2:17-cv-00279-TLF

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the Court finds defendant's decision to deny benefits should be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

On March 26, 2013, plaintiff filed an application for SSI benefits, alleging she became disabled beginning May 1, 2002. Dkt. 13, Administrative Record (AR) 19. That application was denied on initial administrative review and on reconsideration. *Id.* A hearing was held before an administrative law judge (ALJ), at which plaintiff appeared and testified as did a vocational expert. AR 53-92.

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 1

In a decision dated May 26, 2015, the ALJ found that plaintiff could perform other jobs existing in significant numbers in the national economy and therefore that she was not disabled. AR 19-33. Plaintiff's request for review was denied by the Appeals Council on April 11, 2016, making the ALJ's decision the final decision of the Commissioner, which plaintiff then appealed in a complaint filed with this Court on February 23, 2017. AR 39; Dkt. 3; 20 C.F.R. § 416.1481.

Plaintiff seeks reversal of the ALJ's decision and remand for further administrative proceedings, arguing the ALJ erred in evaluating the medical opinion evidence, in assessing plaintiff's residual functional capacity ("RFC"), and in finding she could perform other jobs existing in significant numbers in the national economy. For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged, and therefore affirms the decision to deny benefits.

## DISCUSSION

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I. <u>The ALJ's Evaluation of the Medical and Other Opinion Evidence</u>

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may

draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (9th Cir. 2017) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). Even when a treating or examining physician's opinion is contradicted, an ALJ may only reject that opinion "by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

A. <u>Dr. Washburn</u>

Plaintiff was evaluated in mid-July 2013, by Richard W. Washburn, Ph.D., who opined that plaintiff "appears to have average intelligence and current testing and [mental status examination] indicate that she has no significant impairment in memory or other cognitive abilities," which "suggests that her inability to work at this time is primarily due to her emotional instability." AR 459. Dr. Washburn went on to reiterate that plaintiff "does not appear to have the level of emotional stability needed to meet the requirements of full time, gainful employment at this time," concluding that plaintiff "would need mental health counseling for at least a year or more to prepare her to return to employment." *Id.* In addition, Dr. Washburn assessed plaintiff with a global assessment of functioning ("GAF") score of 45.[1] AR 458.

The ALJ accorded "great weight to Dr. Washburn's assessment of [plaintiff's] cognitive ability because it is supported by results from the mental status examination and psychometric tests . . . he administered." AR 28. However, the ALJ accorded "little weight" to the GAF score of 45 and to Dr. Washburn's opinion that plaintiff's instability would preclude her from full-time gainful work, because it was not supported by documented clinical findings. AR 28-29. The ALJ also found that in light of plaintiff's "relatively normal performance on cognitive testing," Dr. Washburn seemed "to rely heavily on [plaintiff's] description of her symptoms and limitations," which the ALJ found to be unreliable. AR 29.

The ALJ, in addition, pointed to the longitudinal record, which the ALJ found "indicates [plaintiff's] mood has been generally stable with the help of medication and counseling," in contrast to plaintiff's report to Dr. Washburn of severe depression, anxiety, psychosis and mood

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." *Id.* (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34).

lability. AR 29. Specifically, the ALJ noted that plaintiff had been able to interact with providers and participate in mental health treatment, and that "[n]o examiner or provider has ever observed any objective evidence of psychosis." *Id.* Lastly, the ALJ found the fact that plaintiff was the primary caregiver to her second fiancé and was able to overcome her legal issues by meeting all court-mandated requirements, was indicative of a greater ability to function than Dr. Washburn found. *Id.*

Plaintiff argues the ALJ erred in rejecting Dr. Washburn's opinion on the basis that he relied heavily on her description of her symptoms and limitations. Specifically, plaintiff asserts Dr. Washburn's conclusions also were based on multiple factors, including a records review and test results. But as the ALJ pointed out, the mental status examination and psychometric testing results Dr. Washburn produced supported Dr. Washburn's opinion of "no significant impairment in memory or other cognitive abilities." AR 456-59; *Batson*, 359 F.3d at 1195 (an ALJ need not accept a medical opinion if it is inadequately supported by clinical findings). Likewise, nothing in those results appear to be remarkable regarding social or other emotional factors. *Id.* Nor does plaintiff point to or demonstrate how any specific records that Dr. Washburn may have reviewed support his opinion as to her mental instability.

Plaintiff accuses the ALJ of acting as her own medical expert and of substituting her own interpretation of the objective clinical findings for that of Dr. Washburn. This, however, is not an accurate characterization. Rather, the record shows the ALJ carried out her duty of identifying and resolving any conflicts in the medical evidence. The ALJ fulfilled this duty by noting the inconsistency between Dr. Washburn's assessment of Ms. Broyles (as reflected in the mental status examination that showed normal mental status), and testing results and his ultimate medical opinion. Plaintiff also argues the ALJ committed an error of law by ignoring the reality

of psychological examinations, which must to at least some extent rely on a claimant's subjective reporting.

"A physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (internal quotation marks and citation omitted)). "[T]he report of a psychiatrist," though, "should not be rejected simply because of the relative imprecision of the psychiatric methodology." *Id.* (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987))). "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields," and it must be recognized that "[d]iagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient," yet it must also be acknowledged that "such is the nature of psychiatry." *Id.* "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Id.*

Courts have recognized that "[a] patient's report of complaints, or history, is an essential diagnostic tool," and that "[a]ny medical diagnosis must" at least to some extent "necessarily rely upon the patient's history and subjective complaints." *Flanery v. Chater*, 112 F.3d 346, 350 (8th Cir. 1997) (citation omitted). An ALJ may reject the opinion of a psychiatrist under some circumstances, and this case illustrates one of the legally valid reasons for doing so. The ALJ found that Ms. Broyles was not fully credible regarding her symptoms and limitations (a finding that the plaintiff did not challenge on appeal). This undermined the psychological findings of Dr. Washburn. This distinguishes Ms. Broyles' case from the situation in *Buck*, 869 F.3d at 1049.

In *Buck*, the clinical interview and mental status evaluation the medical source conducted constituted "objective measures" that produced results indicating the plaintiff's learning "would be impaired to some degree." *Id.* at 1045, 1049. Because those measures could not be discounted as a "self-report," the psychologist's "partial reliance on [the plaintiff's] self-reported symptoms [was] not a reason to reject [the psychologist's] opinion." *Id.* at 1049. By contrast, the Ninth Circuit held in *Morgan v. Comm'r of Social Sec. Admin.,* 169 F.3d at 602, that the ALJ properly discounted the plaintiff's subjective complaints, and also discounted the opinions of a treating psychiatrist and a treating psychologist whose opinions were premised on those subjective complaints.

The ALJ accurately considered substantial evidence in the record and followed the law in rejecting the opinion of Dr. Washburn. The ALJ correctly pointed to Dr. Washburn's own reading of the mental status examination he conducted concerning Ms. Broyles and psychometric testing results, which showed no significant impairment in plaintiff's cognitive abilities. Nor do those results reasonably demonstrate the level of emotional instability Dr. Washburn also found. Therefore this case does not present the same type of situation as *Buck*, because the record in *Buck* contained objective evidence of significant symptoms of mental illness that might significantly limit the claimant's ability to function in the workplace. *Id.* at 1045, 1049. Instead, this case is more similar to the facts in *Morgan,* because the record in that case did not contain objective symptoms of mental illness that might limit the claimant's ability to work on a sustained basis; and because the claimant's credibility in *Morgan* was appropriately discounted by the ALJ.

Plaintiff argues as well that the ALJ erred in finding the longitudinal record indicated her mood had been generally stable with the help of treatment. Specifically, plaintiff asserts that her

mental health impairments fluctuate, and that no medical source has suggested that stability in her mood means that she can perform work activity on a consistent basis. But a review of the record largely supports the ALJ's determination here, revealing plaintiff's mood saw an increase in stability over time. *See* AR 2706-2707, 2719-2722, 2725, 2728-2731, 2733-2737, 2746-2748, 2750, 2755, 2763, 2770-2773, 2778, 2781-2782, 2784-2786, 2796, 2798; *Batson*, 359 F.3d at 1195 (an ALJ need not accept a physician's opinion if that opinion is inadequately supported "by the record as a whole"). While the Court agrees with plaintiff that the ALJ's reliance on her caregiver role and completion of her court-mandated obligations do not necessarily contradict Dr. Washburn's conclusions, the other reasons the ALJ provided for discounting that opinion are proper and sufficient to uphold the ALJ's decision.

      B.      <u>Dr. Wilkinson</u>

William R. Wilkinson, Ed.D., evaluated plaintiff in late June 2014, opining that she was moderately to markedly impaired in a number of mental functional categories. AR 2247-2248. Dr. Wilkinson further opined that while plaintiff's remote memory was fair and her recent memory was low average to average, "with stress sustained, her ability to continue with good attention and holding long enough to process into [long-term] memory would weaken while she currently does not have a lot of reserves to manage the stress." AR 2249. He opined that as with plaintiff's memory, in regard to concentration "with any sustained cognitive effort as generally required in the usual, normally pressured 8 hour day, 40 hour work week, she would tire, make mistakes." *Id.*

The ALJ gave "little weight" to Dr. Wilkinson's opinion regarding plaintiff's ability to sustain cognitive functioning on the basis that it was speculative, noting this opinion was offered despite plaintiff's fair to average performance on memory and concentration testing. AR 29. The

ALJ accorded greater weight to Dr. Washburn's conclusion that she had no significant impairments of either memory or cognitive function. *Id.* As she did with Dr. Washburn's conclusions, the ALJ discounted Dr. Wilkinson's opinion because he relied heavily on plaintiff's self-reported symptoms and limitations, while the longitudinal treatment record indicated mood stability with medication and mental health therapy. AR 30.

The ALJ accurately considered substantial evidence in the record and followed the law with respect to the opinion of Dr. Wilkinson. The clinical findings Dr. Wilkinson provided are, like those from Dr. Washburn, largely unremarkable (AR 2249). Given the evidence in the record from plaintiff's treatment providers noted above, the ALJ properly rejected Dr. Wilkinson's opinion for the same reasons that the ALJ properly rejected the opinion of Dr. Washburn. Plaintiff's arguments regarding improper reliance by the ALJ on plaintiff's subjective reporting and mood stability thus are unpersuasive.

### C. Mr. Fuller

In late January 2015, plaintiff's mental health treatment provider, William Fuller, LMHC, MHP, wrote a letter in which he opined that plaintiff "struggles with mood swings, that cause a lack of emotional regulation, that severely impairs her ability to function on a consistent basis." AR 2709. The ALJ accorded this opinion "little weight" because:

> First, [Mr. Fuller] is not an acceptable medical source. Second, he acts as an advocate for the claimant, which diminishes the reliability of his opinion. Third, Mr. Fuller's opinion is incongruent with the treatment records and mental status examinations from Sound Mental Health, which indicate that the claimant's mood is stable with therapy and medication, and that she usually presents to appointments, with appropriate hygiene, normal psychomotor function, euthymic mood, appropriate affect, good eye contact, cooperative behavior, logical thought processes, appropriate thought content, no suicidal ideation, full orientation, and intact cognition. Fourth, Mr. Fuller's opinion is inconsistent with the claimant's activities, which includes her ability to resolve her legal issues by satisfying all demands from the court. Finally, to the extent that Mr. Fuller relied on the claimant's subjective report, his

   opinion is further discounted. As discussed above, the claimant's subjective
   report is not fully credible.

AR 30 (internal citations omitted). Plaintiff argues the ALJ erred in so rejecting Mr. Fuller's opinion evidence. The Court disagrees.

  The bulk of the longitudinal record showing plaintiff's mood stability and improvement with mental health treatment come from Mr. Fuller. *See* AR 2728-2731, 2733-2737, 2746-2750, 2755, 2763, 2770-2773, 2778, 2781-2782, 2796. Accordingly, for the same reasons discussed above, the ALJ properly rejected Mr. Fuller's opinion on the basis of its inconsistency with the longitudinal record and reliance on plaintiff's self-reporting. The Court agrees the fact that Mr. Fuller is not an acceptable medical source is not alone a sufficient basis to discount his opinion. The Court also finds the record fails to show Mr. Fuller actually acted as an advocate for plaintiff or that plaintiff's activities show she is more capable than Mr. Fuller found. However, the other reasons the ALJ gave for rejecting Mr. Fuller's opinion were proper and sufficient to uphold the ALJ's determination.

  D. <u>Dr. Bowes</u>

  Plaintiff argues a late July 2015 psychological evaluation report completed by Tasmyn Bowes, PsyD., submitted for the first time to the Appeals Council, supports a determination that the ALJ's decision is not supported by substantial evidence. Such evidence is part of the record that the Court "must consider when reviewing the Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012). But the Court finds Dr. Bowes' evaluation report, in which she found plaintiff to be markedly to severely impaired in a number of mental functional areas (AR 2817-2818), would not change the ALJ's ultimate disability determination.

First, as with the other medical sources in the record discussed above, the mental status examination results Dr. Bowes produced are, with some exceptions, largely unremarkable, and do not support the significant mental functional limitations she assessed. AR 2819. But even if the few remarkable findings Dr. Bowes produced are indicative of significant mental functional issues, given the ALJ's legally sufficient reasons for rejecting the other medical opinion evidence, it is far from clear that this one opinion would be sufficient to overturn those findings. It is true that plaintiff scored in the severe range on both the Beck Depression Inventory and the Beck Anxiety Inventory (AR 2816), but those tests reflect the patient's subjective interpretation of his or her symptoms as well. *See Abrams v. Colvin*, 2015 WL 1649039, at *4 (E.D. Ky. April 14, 2015); *Thompson v. Colvin*, 2014 WL 4722286, at *4 (D. Or. 2014). Accordingly, the Court declines to overturn the ALJ's decision based on Dr. Bowes' evaluation report.

E. Dr. Borton

Plaintiff takes exception to the ALJ assigning significant weight to the opinion of Richard Borton, Ph.D., a non-examining psychologist, who opined that plaintiff could interact with others and carry out simple and familiar detailed instructions. AR 112. Dr. Borton also opined that although she would need to be prepared for workplace changes due to diminished stress tolerance, she still could adapt to simple variations in routine. AR 31, 113. The ALJ found Dr. Borton's opinion to be generally consistent with the overall evidence in the record.

Plaintiff argues the ALJ's reliance on Dr. Borton's opinion was in error, because "[t]here is no evidence in the record about the specifics of the probation requirements which indicates it is comparable to changes and stresses in a work environment, and the AJ [made] a conclusion reserved for medical experts." Dkt. 17, p. 15. As to plaintiff's first point, Dr. Burton was clear in opining that *despite* her diminished stress tolerance, she could still adapt to simple variations in

1 routine. And because Dr. Borton was opining that plaintiff could still so function, the ALJ was
2 not remiss in focusing on that aspect of his opinion as indicative of Dr. Burton's conclusion as to
3 plaintiff's actual ability to function in the workplace.

4 Nor does the Court agree that in finding Dr. Borton's opinion to be consistent with the
5 overall evidence in the record, the ALJ was acting in the role of a medical expert. Rather, the
6 ALJ merely was performing her duties to review and evaluate the evidence. Lastly, plaintiff
7 alleges that the explanations Dr. Borton gave for his opinion primarily consist of conclusory
8 statements, and that Dr. Borton only reviewed one functional assessment from Dr. Washburn.
9 The ALJ did not err in rejecting the opinion evidence in the record that indicated plaintiff was
10 more functionally limited than found by Dr. Borton, and it follows that the ALJ also did not err
11 in finding the reliable evidence in the record overall was consistent with Dr. Borton's opinion.

12 II.     The ALJ's RFC Assessment

13 The Commissioner employs a five-step "sequential evaluation process" to determine
14 whether a claimant is disabled. 20 C.F.R. § 416.920. If the claimant is found disabled or not
15 disabled at any particular step thereof, the disability determination is made at that step, and the
16 sequential evaluation process ends. *See id.* A claimant's RFC assessment is used at step four of
17 the process to determine whether he or she can do his or her past relevant work, and at step five
18 to determine whether he or she can do other work. Social Security Ruling ("SSR") 96-8p, 1996
19 WL 374184 *2. It is what the claimant "can still do despite his or her limitations." *Id.*

20 A claimant's RFC is the maximum amount of work the claimant is able to perform based
21 on all of the relevant evidence in the record. *Id.* However, an inability to work must result from
22 the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those
23 limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing
24 a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related

25

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 13

functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found plaintiff had the RFC:

**to perform a full range of work at all exertional levels. [She] should avoid concentrated exposure to hazards. [She] is able to perform simple tasks and familiar detailed tasks. [She] can perform work with no public contact. [She] can have occasional, superficial contact with coworkers.**

AR 24 (emphasis in the original). Plaintiff argues that in light of the ALJ's errors in rejecting the medical opinion evidence in the record, the ALJ's RFC assessment cannot be upheld. However, because as discussed above the ALJ did not err in evaluating that evidence, the ALJ also did not err in assessing plaintiff's RFC on this basis.

Plaintiff also argues that the record contains no up-to-date functional assessment of her physical abilities after her colon cancer diagnosis and surgery. But plaintiff did not challenge the ALJ's evaluation of the medical evidence in the record concerning her post-cancer-surgery physical status, and makes no showing that any more recent functional assessment would produce evidence of any greater functional limitation relating to cancer surgery. Nor does the record support a restriction to being off task 20% of the time or absent two or more days a month as plaintiff suggests.

III. The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101. An ALJ's step five determination will be upheld if the weight of the medical evidence supports

the hypothetical posed to the vocational expert. *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record." *Id.* (citations omitted).

The ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered at the hearing in response to a hypothetical question concerning an individual with the same age, education, work experience and RFC as plaintiff. AR 32. Plaintiff argues that because the ALJ's RFC assessment is not supported by substantial evidence, her step five determination is equally unsupported. For the reasons discussed above concerning the medical evidence, the ALJ's RFC assessment is supported by substantial evidence and was not erroneous, therefore her findings at step five are also affirmed.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

Dated this 13th day of December, 2017.

Theresa L. Fricke
United States Magistrate Judge

ORDER AFFIRMING DEFENDANT'S DECISION TO
DENY BENEFITS - 15